Caleb E. Mason (State Bar No. 246653)
Jacqueline M. Sparagna (State Bar No. 315275)
WERKSMAN JACKSON & QUINN LLP
888 West Sixth Street, Fourth Floor
Los Angeles, California 90017
Telephone: (213) 688-0460
Facsimile: (213) 624-1942
Email: cmason@werksmanjackson.com
Email: jsparagna@werksmanjackson.com
Attorneys for Plaintiff

### UNITED STATES DISTRICT COURT

### CENTRAL  DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY TOLAND,<br><br>          Plaintiff,<br><br>v.<br><br>OFFICER ZACHARY MCFARLAND, in his individual and official capacities; OFFICER STEPHANIE LACK, in his individual and official capacities; PASADENA CITY ATTORNEY'S OFFICE; JOHN NAM, in his individual and official capacities; DOES 1-10, inclusive,<br>          Defendants. | Case No.: 2:21-cv-04797-AB-AGR<br><br>Hon. Andre Birotte, Jr.<br>Hon. Alicia G. Rosenberg<br><br>**PLAINTIFF JEFFREY TOLAND'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS UNDER FRCP 12(b)(6)**<br><br>DATE: November 19, 2021<br>TIME: 10:00 a.m.<br>DEPT: 7B |

# TABLE OF CONTENTS

**PAGE(S)**

I.     **INTRODUCTION** ........................................................................1

II.    **ARGUMENT**...............................................................................4

       A.     The City's Claim that the Likely Presence of DA Personnel on the Scene of the Warren Shooting, a Month Before the Toland Arrest, Satisfied the City's *Brady* Obligations in the Toland Case, Lacks Merit ...................................................................................4

       B.     The City's Assertion that It Had A Legal Basis for Withholding the Warren Shooting Materials Is Wrong ...............................7

       C.     The Public Records Act Request Response Is Probative of and Partly Constitutive of the Deliberate Violation...................11

             1. The Affirmative Falsehood in the City's Section 832.7 Response Was Illegal and Demonstrated the City's Intent to Hide the Information .....................................................................11

             2. Section 832.7's Withholding Provisions Require a Written Response Acknowledging the Existence of the Material and Stating the Reason for the Withholding—Instead, the City Falsely Stated that No Documents Existed .....................................13

             3. Citizens Act Through Their Lawyers.............................14

       D.     The Whistleblower Sending the Flash Drive to the Superior Court Was Not an Act of Compliance by the City; The City Cannot Claim Compliance Based on an Act It Did Not Authorize and Tried to Prevent ...............................................................14

i

E.    Plaintiff Suffered Significant and Cognizable Constitutional
      Harm .................................................................................................. 16

III.  **CONCLUSION** ........................................................................................ 20

ii

# TABLE OF AUTHORITIES

**PAGE(S)**

## <u>CASES</u>

*Akrawi v. Booker*,
   572 F.3d 252 (6th Cir. 2009) ................................................6

*Becerra v. Superior Court*
   44 Cal. App. 5th 897 (2020) .................................................7

*Brady v. Maryland*
   373 U.S. 83 (1963)……………………………………......*passim*

*City of Santa Cruz v. Mun. Ct.*
   49 Cal. 3d 74 (1989) ...........................................................7

*Gantt v. Roe*
   389 F.3d 908 (9th Cir. 2004) .............................................. 17

*Gutierrez v. Solano*
   862 F. Supp. 2d 1037 (C.D. Cal. 2012)..........................3, 18

*Haupt v. Dillard*
   17 F.3d 285 (9th Cir. 1994)........................................3, 16, 17, 18

*McDonough v. Smith*
   139 S. Ct. 2149 (2019) ........................................3, 17, 19

*Pitchess v. Superior Court*
   (1974) 11 Cal.3d 531............................................*passim*

*Raminder Kaur v. Maryland*
   141 S. Ct. 5 (2020) .............................................................5

*Tennison v. City and Cty of San Francisco*
   570 F.3d 1078 (9th Cir. 2009) ............................................ 17

iii

*United States v. Davenport*
    753 F.2d 1460 (9th Cir. 1985) ................................................................ 17

*United States v. Scarborough,*
    128 F.3d 1373 (10th Cir. 1997) ............................................................. 17

*United States v. Anderson,*
    391 F.3d 970 (9th Cir. 2004) ................................................................ 17

*United States v. Gamez-Orduno*
    235 F.3d 453 (9th Cir. 2000) ................................................................ 17

*United States v. Alvarez*
    86 F.3d 901 (9th Cir. 1996) ................................................................ 17

*United States v. Manning*
    56 F.3d 1188 (9th Cir. 1995 ................................................................ 17

*United States v. Bagley*
    473 U.S. 667 (1985) ................................................................ 12

*United States v. Meros*
    866 F.2d 1304 (11th Cir. 1989) ................................................................ 5

*United States v. Sedghaty*
    728 F.3d 885 ................................................................ 1

*United States v. Sells Engineering, Inc.*
    463 U.S. 418 ................................................................ 5

**STATUTES**

Evidence Code § 1043 ................................................................ 6, 7, 17

Evidence Code § 1044 ................................................................ 7

Evidence Code § 1045 ................................................................ 7

iv

Penal Code § 832.7 ...............................................................................*passim*

Penal Code § 1054.1 ..........................................................................2, 10

v

## I.     INTRODUCTION

Mr. Toland was prosecuted for resisting arrest and assaulting a police officer. His defense was that the officer used excessive force, unreasonably escalated the encounter, and then made false statements about what had happened. The claims at issue in the City's Motion to Dismiss (Claims Five and Six) allege that the City withheld, suppressed, and denied the existence of extensive evidence in its possession, including at least 234 pages of reports and statements, relating to an incident one month prior to the Toland incident, in which the same police officer, Officer Zachary McFarland, had used excessive force, unreasonably escalated an encounter, shot and killed a Pasadena resident, and then made false statements about what had happened ("Warren Shooting," "Warren Shooting Materials").

The City's Motion never asserts, suggests, or argues that the withheld Warren Shooting Materials do not meet the established *Brady* standard, *see*, *e.g.*, *United States v. Sedghaty*, 728 F.3d 885, 899, of being favorable to the defendant and material to the case. The City thus concedes that point, as it should.

Instead, the City's Motion makes three related arguments.  All three are "no harm, no foul" variants.  All three lack merit.

The first argument is: **No harm, no foul, because the DA's Justice System Integrity Division office heard about the Warren shooting when it happened**. Motion 7.

The City argues that someone from the DA's Justice System Integrity Division ("JSID") was probably alerted to the shooting the night it happened, and therefore (the City argues) it was permitted to withhold all evidence of the shooting and the investigation reports (which didn't yet exist on the night of the shooting) in the Toland case, because (it argues) presumably someone, somewhere in the 1000-lawyer DA's office knew that Officer McFarland had shot Mr. Warren.  The City cites no authority to support this novel and facially bizarre contention, and Mr.

Plaintiff Opposition to Defendant's Motion to Dismiss Under FRCP 12(b)(6)

1    Toland is aware of none.

2    The second argument is: **No harm, no foul, because we were permitted to**
3    **withhold the materials except in response to a *Pitchess* motion, and even**
4    **though we *also* withheld them in response to Mr. Toland's *Pitchess* motion,**
5    **the court had already received the whistleblower's flash drive by then, and**
6    **wouldn't return it even though we tried to get it back.**  Motion 8-14.

7    This argument, in short, is that even though the City tried everything in its
8    power to keep the court, the prosecutor, and the defense from learning about the
9    Warren shooting materials, the court got them anyway, so "harm, no foul."  The
10   argument fails at every step. The City argues that it was not obligated to disclose
11   the records in its Public Records Act request, was not obligated to affirmatively
12   produce them to the prosecution, and was not obligated to produce them in
13   response to a Penal Code 1054.1 motion.  Rather, says the City, the only
14   procedural avenue in which it was obligated to produce the records was in response
15   to a *Pitchess* motion.

16   This argument lacks merit.  First, the predicate assertion of confidentiality is
17   false: the records in question were *not* confidential as a matter of express statutory
18   law, and were *not* subject to the *Pitchess* procedures. Second, as the FAC alleges
19   and as the City does not and cannot deny, Mr. Toland *made* a *Pitchess* motion, and
20   the Superior Court *granted* it, and the City *still withheld the materials from Mr.*
21   *Toland, the prosecution, and the Superior Court*.  The City waves that aside, and
22   says it doesn't matter, because an unknown whistleblower provided the materials
23   to the Superior Court separately, and Mr. Toland got them eventually—despite the
24   City's best efforts to prevent him from learning about them. Mr. Toland is not
25   exaggerating the argument: the City explicitly argues that the unauthorized leak of
26   the materials by an unknown whistleblower, to which the City responded by
27   sending its Chief Deputy City Attorney to court to tell the Superior Court that the
28   production was "inadvertent" and to demand that the Superior Court return the

flash drive, nonetheless constitutes "compliance" with its *Brady* obligations.

The third argument is: **No harm, no foul, because the DA dismissed the charges once she saw the Warren shooting materials, so Mr. Toland was not convicted**.  Motion 14-15.

This argument (which Judge Pregerson of this Court called a "no harm, no foul" argument, and rejected, *Gutierrez v. Solano*, 862 F. Supp. 2d 1037, 1043 (C.D. Cal. 2012)) asserts that Mr. Toland did not suffer any constitutionally cognizable harm because he was not convicted.  However, the argument fails, because this exact argument has already been rejected by this Court, by the Ninth Circuit, and by the United States Supreme Court, as set forth herein. *See McDonough v. Smith*, 139 S.Ct. 2149 (2019), *Haupt v. Dillard*, 17 F.3d 285 (9th Cir. 1994), *Solano*, 862 F. Supp. 2d 1037, discussed *infra*. The harm to a person of being wrongly accused and prosecuted is real and constitutionally cognizable even if the charges are ultimately dropped or the person is ultimately acquitted.

All the City's arguments boil down to the assertion that Mr. Toland cannot state a constitutionally cognizable claim because an unknown Police Department employee gave the materials to the Superior Court in November 2020, Mr. Toland got the materials in March 2021, and the case was dismissed in April 2021.  The City contends that it doesn't matter that it tried to suppress the materials, that it falsely claimed they didn't exist, and that it withheld them from the Superior Court in its own *Pitchess* production (the one context in which it claims it did have to produce them).  The City contends that it doesn't matter that the whistleblowing employee who sent the drive to the Superior Court judge was not authorized to do so, or that the City told the Superior Court the disclosure was inadvertent, and tried mightily to get the Court to return the flash drive and to prevent the defense and prosecution from learning of it.  None of that matters, says the City.  Your charges were dropped, your story had a happy ending, so you can't sue.  As set forth herein, that argument is meritless.  It's like telling an excessive force victim that he

can't sue over the illegal chokehold because the officer let him go before he died. That's not the law.  And as set forth herein, multiple courts, from this Court up to the Supreme Court have held that that's not the law.  A person who is wrongfully charged and prosecuted suffers constitutionally cognizable harm from the wrongful charge and prosecution.  That harm doesn't vanish when he's acquitted or the charges are dropped. As the Ninth Circuit has expressly held in the identical procedural posture, the fact that he wasn't convicted is relevant only to calculating his damages; it has nothing to do with the validity of the cause of action.

## II.   ARGUMENT

### A. The City's Claim that the Likely Presence of DA Personnel on the Scene of the Warren Shooting, a Month Before the Toland Arrest, Satisfied the City's *Brady* Obligations in the Toland Case, Lacks Merit

At Motion 7:17-8:20, the City contends that if any personnel employed by the DA's office responded to the scene of the Warren shooting on or about May 17, 2019 (a month before the Toland incident), the presence of those personnel that night somehow satisfied the prosecution's *Brady* obligations in the Toland case. This argument makes no sense.  An investigative roll-out to the Warren shooting on May 17, 2019 (by, presumably, personnel from the DA's Justice System Integrity Division (JSID))[1] could not satisfy *Brady* obligations in a future prosecution of Mr. Toland by the DA's Pasadena branch office.

The argument lacks merit. It has three obvious defects. First, the constitutional right is held by a *defendant in a case*; the corresponding obligation runs to the prosecution team on that case, including the assigned law enforcement agency.  On May 17, 2019, Mr. Toland was not a defendant in a case; the Toland case did not yet exist; Officer McFarland had never met Mr. Toland and wouldn't encounter him for another month.  Yet the City asserts (without any authority

---

[1] Responding to officer involved shootings and prosecuting excessive force cases against officers is part of JSID's function.

Plaintiff Opposition to Defendant's Motion to Dismiss Under FRCP 12(b)(6)

whatsoever) that the assumed fact that a prosecutor or investigator in JSID responded to the Warren shooting, and thereby may have learned that Officer McFarland had been the shooter, somehow satisfies the City of Pasadena's *Brady* obligations to Mr. Toland.

Second, the presumed JSID presence at the Warren shooting scene was part of (as the City knows and acknowledges) a potential criminal investigation *of Officer McFarland*. That is JSID's function, and that is the reason why its personnel typically are called out to and/or informed of officer-involved shootings.

The City's argument appears to be an attempt to turn the "imputed knowledge" *Brady* standard on its head.  Well-established *Brady* caselaw provides that if investigators or police officers know a fact or have a piece of evidence, but the prosecutor herself is unaware of, that's not a defense to a *Brady* claim: knowledge held by any part of the "prosecution team" is imputed to the whole, and therefore must be produced if it meets the materiality threshold.

The City appears to now be suggesting that if any employee of the entire prosecuting agency of over 1000 lawyers (not just the prosecution team) was aware of a fact, then the City is free to subsequently withhold that fact from the actual prosecutor and prosecution team on the actual case in which it's relevant.  This cannot be the law, and the City offers no authority of any kind to support the claim. Indeed, cases making reference to the "prosecution team" for *Brady* purposes refer to the prosecutors and investigators working on a particular case. *See, e.g., United States v. Sells Engineering, Inc*., 463 U.S. 418, 429 fn. 11 (1983) (construing Fed. R. Crim Proc. 6 as limiting access to grand jury materials to the "prosecution team," and defining that group as the prosecutors "working on a given prosecution," and rejecting the suggestion that the Rule might allow "Justice Department attorneys *not* working on a prosecution" in a particular case to have access to grand jury materials in that case) (emphasis in original); *Raminder Kaur v. Maryland,* 141 S. Ct. 5 (2020) (Sotomayor, J., concurring with denial of

Plaintiff Opposition to Defendant's Motion to Dismiss Under FRCP 12(b)(6)

certiorari) (referring to "prosecution team" as "the prosecutors who had personally reviewed" the case file); *United States v. Meros*, 866 F.2d 1304, 1309 (11th Cir. 1989); *Akrawi v. Booker*, 572 F.3d 252, 263 (6th Cir. 2009).  No authority of which Mr. Toland is aware has ever suggested that every single attorney employed by a prosecuting agency is equally constitutive of the "prosecution team" for every single case brought by the agency.

Third, the City forgets that the exculpatory utility of the withheld materials was *more* than just the fact that Officer McFarland had been the shooter.  It was also the fact that he made false statements to investigators about what happened.  Those statements are documented in the reports the City possessed, to wit: McFarland told investigators he'd fired "one or two" or "two or three shots," but when they examined his gun, they found that he'd fired eight times.  McFarland told investigators that he could clearly see Mr. Warren pointing a gun at him, but the body-worn camera video reveals that the other three officers who were standing right next to McFarland at the time never made any such observations. Indeed, one of them contradicted McFarland when he said Warren was pointing a gun, and the supervising officer on scene told McFarland to keep talking to Mr. Warren, but McFarland ignored the command, said "I'm taking him out" to himself under his breath, then killed Mr. Warren from across the street.  *See* FAC ¶¶ 19-21.

Therefore, the reports themselves—the 234 pages of witness interviews and other records—are impeaching, separate and apart from the mere fact that the shooting had occurred.  And those reports had not yet been written on the night of May 17, 2019, when JSID personnel presumably rolled out to the scene.  What we do know is that those 234 pages were in the possession of the City in October 2019, when the City affirmatively lied and said it had nothing; and that the City withheld those 234 pages from the prosecutor, the defense, and the Superior Court. *See* FAC ¶ 93-98.

Plaintiff Opposition to Defendant's Motion to Dismiss Under FRCP 12(b)(6)

## B. The City's Assertion that It Had A Legal Basis for Withholding the Warren Shooting Materials Is Wrong

The City's argument at Section B, Motion 8-9, is difficult to parse. It appears the City is claiming that it was entitled to withhold the information about the Warren shooting from every inquiry other than a *Pitchess* motion. This argument lacks merit.

First, the *Pitchess* procedures, codified at Penal Code section 832.7 and Evidence Code sections 1043 ff., apply only to confidential records, and beginning January 1, 2019—five months prior to the Warren shooting—all records relating to an officer's shooting at a person or using force causing serious injury or death became, as a matter of law, *non-confidential*. The Court of Appeal has held clearly and expressly that all such materials are no longer subject to or part of the *Pitchess* procedures. *Becerra v. Superior Court*, 44 Cal. App. 5th 897, 914-20, 934 (2020) (explaining history of *Pitchess* procedures, caselaw and statutes, history and purposes of 2019 amendments to section 832.7, and holding that the January 1, 2019 amendments to section 832.7(b)(1) mean what they say, and that records specified therein, inter alia of shootings and uses of force causing serious injury, are not confidential). The City's claim that it had a right to withhold the Warren shooting materials from all requests other than a *Pitchess* motion is false. Moreover, it is implausible, if not impossible, that any decision-making official in the City Attorney's Office or the Pasadena Police Department was unaware, in the summer and fall of 2019, of the amendments to section 832.7 that took effect on January 1, 2019. The bill was one of the most hotly-debated topics in the criminal justice community in the year before its passage, and hundreds of advocacy groups lobbied for or against the bill, including every major law-enforcement organization in the state.[2]

---

[2] *See, e.g.*, Senate Rules Committee, SB 1421 Floor Analysis, https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=20172018

Plaintiff Opposition to Defendant's Motion to Dismiss Under FRCP 12(b)(6)

As the Court (and the City) are aware, the *Pitchess* framework (Evidence Code section 1043 ff.) exists solely and expressly for the purpose of dealing with material in officers' personnel files that is confidential under section 832.7. *See, e.g., City of Santa Cruz v. Mun. Ct.,* 49 Cal. 3d 74, 81–82 (1989).[3]  If materials are not confidential under section 832.7, then they are not covered by *Pitchess*.  And the Warren shooting materials are explicitly *not* confidential under section 832.7, because they pertained to a shooting by Officer McFarland, that resulted in death or serious injury. Section 832.7 provides that the following categories of materials "shall not be confidential":

> a record relating to the report, investigation, or findings in any of the following: an incident involving the discharge of a firearm at a person by a peace officer or custodial officer; an incident in which the use of force by a peace officer or custodial officer against a person resulted in death, or in great bodily injury.

Penal Code sec. 832.7(b)(1)(A).

As a matter of law, all records relating to the Warren shooting were *not confidential*, under the amendments to section 832.7 that took effect on January 1, 2019, five months before the Warren shooting, six months before Mr. Toland's arrest, and nine months before Mr. Toland's PRA request. Because the materials

---

0SB1421 (listing over 150 groups that had expressed support or opposition; the 14 listed law enforcement groups were all opposed)

[3] "In 1978, the California Legislature codified the privileges and procedures surrounding what had come to be known as "Pitchess motions" (after our decision in *Pitchess v. Superior Court* (1974) 11 Cal.3d 531, 113 Cal.Rptr. 897, 522 P.2d 305) through the enactment of Penal Code sections 832.7 and 832.83 and Evidence Code sections 1043 through 1045.4 The Penal Code provisions define "personnel records" (Pen.Code, § 832.8) and provide that such records are "confidential" and subject to discovery only pursuant to the procedures set forth in the Evidence Code. (Pen.Code, § 832.7.) Evidence Code sections 1043 and 1045 set out the procedures for discovery in detail."

were not confidential, they could not simply be withheld.  They could only be temporarily withheld *if* (a) there was an active criminal or administrative investigation into Officer McFarland's shooting of Mr. Warren, and (b) the City provided a written explanation for the basis of the withholding.  The records could *not* be silently withheld, and the City could not lie and say they didn't exist. Section 832.7 is crystal clear on that point:

> During an active criminal investigation, disclosure may be delayed for up to 60 days from the date the use of force occurred or until the district attorney determines whether to file criminal charges related to the use of force, which occurs sooner. If an agency delays disclosure pursuant to this clause, the agency **shall provide, in writing, the specific basis** for the agency's determination that the interest in delaying disclosure clearly outweigh the public interest in disclosure.  This writing shall include the estimated date for disclosure of the withheld information.
>
> After 60 days from the use of force, the agency may continue to delay the disclosure of records or information if the disclosure could reasonably be expected to interfere with a criminal enforcement proceeding against an officer who used the force.  If an agency delays disclosure pursuant to this clause, the agency shall, at 180 day intervals as necessary, **provide, in writing, the specific basis** for the agency's determination that disclosure could reasonably be expected to interfere with a criminal enforcement proceeding.  The writing shall include the estimated date for the disclosure of the withheld information.  Information withheld by the agency shall be disclosed when the specific basis for withholding is resolved, when the investigation or proceeding is no longer active, or by no later than 18 months after the date of the incident, whichever occurs sooner.

Penal Code section 832.7(b)(7)(A) (emphasis added).

Because the Warren shooting materials were not confidential, pursuant to the clear and explicit black-letter law of Penal Code section 832.7, the City had no legal basis to withhold them from discovery production or from the prosecution by

9

claiming that they were "*Pitchess* materials."  They were not *Pitchess* materials, because only confidential materials under section 832.7 are *Pitchess* materials, and the Warren shooting materials were not confidential.

Second, the City's *Pitchess* arguments are hollow if not disingenuous, because the City *also withheld the information from its Pitchess production to the Superior Court*.  As the FAC alleges and the City does not dispute, the City withheld the Warren shooting materials from its in camera production to the Superior Court, when the Superior Court granted Mr. Toland's *Pitchess* motion and ordered the City to produce Officer McFarland's file.  The City's subsequent *Pitchess* disclosure to the defense included literally nothing about Officer McFarland. There are only two explanations for the City's failure to provide the materials to the Superior Court: either the materials were in Officer McFarland's file, but someone removed them prior to making the production to the Superior Court; or the materials were not being kept in Officer McFarland's personnel file in the first place.  If the former is true, then the City's entire line of argument about *Pitchess* being the proper framework for production simply demonstrates the City's culpability; if the latter is true, then the City's *Pitchess* arguments are made in bad faith, because the City would not have (as it in fact did not) produce the materials in response to the *Pitchess* motion either.

The City's actions and arguments suggest a carefully calibrated bait-and-switch strategy: falsely assert the non-existence of any records in response to the PRA request; withhold the Warren shooting materials from the prosecution despite the Penal Code 1054.1 request and the court's granting of the defense's motion to compel, on the grounds that "they're *Pitchess* materials" (in defiance of section 832.7); and then, in the face of an actual granted *Pitchess* motion, withhold them again.

In other words, the City's failure to produce the records to the Superior Court in response to its granting of the defense's *Pitchess* motion exposes as

hollow the City's entire argument that it had no prior obligation (under *Brady*, 1054.1, or 832.7) to produce the materials.  If they were *Pitchess* materials, then it had to produce them in response to the *Pitchess* motion; if they weren't *Pitchess* materials, then it had to produce them in response to the PRA, in response to the 1054.1 request, and in response to the court's order compelling production.  But these are not hypotheticals.  We know what the law was and we know what the facts were.  The law (section 832.7(b)(1)) was that they were not *Pitchess* materials; and the facts were that the City withheld them not just from its PRA and 1054.1 productions, but also from its *Pitchess* production.  The City was not operating in good faith; it was simply trying to hide from Mr. Toland, the prosecution, and the Superior Court, the fact that Officer McFarland had shot and killed Daniel Warren, and then made false statements about it.

Taking the City's arguments in the Motion in the very best light for the City, they boil down to this: even though we withheld the documents, and if it that was wrongful, none of that matters because the whistleblower sent the flash drive to the Court.

Such an argument lacks merit legally, morally, and as a matter of common sense.  At the end of the day, the fact is that the City deliberately, and with great effort, tried to prevent the prosecution, the defense, and the Superior Court from learning about Officer McFarland's killing of Daniel Warren on May 17, 2019, and it did so in order to procure Mr. Toland's criminal conviction on felony charges while keeping Officer McFarland's history hidden.  The City's claim that none of that matters because the Superior Court accidentally got the materials despite the City's efforts is akin to arguing that a victim of a wrongful police shooting would have no claim if the gun misfired or the officer had bad aim.

**C. The Public Records Act Request Response Is Probative of and Partly Constitutive of the Deliberate Violation**

The City concedes that it falsely denied, in its Public Records Act request,

11

Plaintiff Opposition to Defendant's Motion to Dismiss Under FRCP 12(b)(6)

that any documents relating a shooting or serious use of force by Officer McFarland existed. It even attaches the document.  City's Request for Judicial Notice, ECF Doc. 36, Ex. C (City's PRA Response, including the affirmative false statement that the Department "has no records that are responsive to your request.")  It then claims this deliberate falsehood is irrelevant.  Its arguments lack merit.

### 1.  The Affirmative Falsehood in the City's Section 832.7 Response Was Illegal and Demonstrated the City's Intent to Hide the Information

The relevance of the false PRA response is twofold.  First, it demonstrates the City's scienter, insofar as the City did the same thing to the Superior Court—it withheld from its in camera *Pitchess* production to the Superior Court all the Warren-related materials. The fact that it had previously affirmatively misrepresented the non-existence of those materials in its PRA response, in direct violation of section 832.7 is strong evidence that the withholding of the materials from the Superior Court was not an accident.

Secondly, and more significantly, it prejudiced Mr. Toland's defense in the manner the Supreme Court acknowledged in *Bagley*: by affirmatively stating that no records existed regarding any serious use of force or shooting by Officer McFarland (as opposed to stating that it was withholding records due to a pending investigation), the City affirmatively misled the defense as to the existence of the records and thus as to the nature of potential discovery in the case. The Supreme Court in *Bagley* explained the significance of an affirmative denial of the existence of evidence as follows:

> The Government notes that an incomplete response to a specific request not only deprives the defense of certain evidence, but also has the effect of representing to the defense that the evidence does not exist. In reliance on this misleading representation, the defense might abandon lines of independent investigation, defenses, or trial strategies that it otherwise would have pursued. We agree that the

prosecutor's failure to respond fully to a *Brady* request may impair the adversary process in this manner.

*United States v. Bagley*, 473 U.S. 667, 682–83 (1985) (internal citation omitted). The City's initial false statement, on October 11, 2019, that it had no documents related to a McFarland shooting or use of force, when it actually had at least 234 pages of precisely that, is exactly what the *Bagley* Court is describing.

**2. Section 832.7's Withholding Provisions Require a Written Response Acknowledging the Existence of the Material and Stating the Reason for the Withholding—Instead, the City Falsely Stated that No Documents Existed**

The City cannot and does not deny that it blatantly violated section 832.7 by denying that it was in possession of responsive documents in its response to defense counsel's PRA request. It claims that the statute would have permitted it to "withhold" the materials related to the Warren shooting. The statute does indeed permit withholding—if the City provides a written response acknowledging the existence of the materials, expressly stating that they are being withheld because of a pending criminal investigation into the officer, and providing written updates every 60 days. The City did not do those things; it did not comply with section 832.7. Instead, it responded with a deliberate affirmative falsehood, and said it did not possess any responsive records. FAC ¶ 98. If the City had complied with the law and provided an accurate and legally-mandated response, Mr. Toland as well as the prosecution would have been put on notice of the existence of potentially discoverable materials and been able to pursue them through the Superior Court. That is the purpose of the "disclose but withhold" provision. There is nothing in the statute that gives the City the license to lie and deny the existence of records of an officer fatally shooting a citizen. Nothing whatsoever. The City's "license to lie" argument is deeply cynical and contrary to section 832.7, and most importantly, to the very principle of due process.

Plaintiff Opposition to Defendant's Motion to Dismiss Under FRCP 12(b)(6)

### 3. Citizens Act Through Their Lawyers

The City suggests that its affirmatively false statement in response to the PRA request served by Mr. Toland's defense counsel is irrelevant, because Mr. Toland's lawyer served the request, not Mr. Toland personally. Motion 11:23-12:11. That suggestion lacks merit. Mr. Toland didn't say anything in court, either; he spoke through his lawyer, as he is doing in this briefing, and as every represented litigant does in every legal proceeding. The City's suggestion that it is impossible to violate a criminal defendant's rights by lying to his lawyer lacks merit, and requires no further analysis. More importantly, the City's claim that Mr. Toland would not have standing to file a state-court civil action demanding a responsive PRA production is irrelevant here; what is relevant here is that the City lied about the existence of records relating to Officer McFarland's shooting and killing a Pasadena resident, and that lie manifestly prejudiced Mr. Toland, as set forth above.

### D. The Whistleblower Sending the Flash Drive to the Superior Court Was Not an Act of Compliance by the City; Therefore the City Cannot Claim Compliance Based on an Act It Did Not Authorize and Tried to Prevent

The City cannot colorably claim that the unauthorized act of an unidentified whistleblower—an act that it did not direct or condone—constitutes compliance with its constitutional obligations. The impropriety of the claim is particularly stark given that after the whistleblower's disclosure, the City immediately used all its resources, including sending its Chief Deputy to court to attempt, repeatedly and vociferously, over a period of five months, to persuade the Superior Court to give back the flash drive and not disclose it to the prosecutor or defense, and where the City argued that the inclusion of the materials regarding the Warren shooting was "inadvertent."

The City should not be permitted to go into Superior Court and tell a state judge: "That flash drive you received was inadvertently produced; we didn't intend

14

Plaintiff Opposition to Defendant's Motion to Dismiss Under FRCP 12(b)(6)

to give it to you; you shouldn't have it; we want it back; don't show it to the prosecutor or defense," and then turn around in Federal Court and tell a federal judge: "We fully complied with our *Brady* obligations by producing that flash drive to the Superior Court."

The entire gravamen of the claims for relief at issue in the Motion is that Mr. Toland did *not* obtain the materials because "the City" produced them. "The City" *did not* produce them—it denied their existence, withheld them from the prosecution, withheld them from the Court (even in the face of a granted *Pitchess* motion). The materials were sent to the Court on a thumb drive by an unknown whistleblower in the Police Department who the Superior Court believed did not agree with the City's suppression efforts. The City told the Superior Court that the production of the flash drive was "inadvertent," and demanded its return. The City has not taken a position before this Court whether the act of sending the flash drive to the Superior Court was "inadvertent" or that of a whistleblower, but one thing is undisputed and indisputable: it was *not* the voluntary act of the City itself. The City itself made that abundantly clear, telling the Superior Court: we didn't want to give you this; we don't want you to have it; we want it back.

The City cannot now claim that a disclosure that it deliberately refused to make for 18 months, that was made against its wishes, either accidentally or to blow the whistle, and that it immediately tried to undo, constitutes "compliance" with *Brady* so as to satisfy its constitutional obligations. Suppose a thief steals a diamond necklace from a museum, and keeps it hidden in his lair while the museum suffers reputational harms and expends significant resources trying to recover the necklace. Then, after 18 months, one of the thief's assistants suffers a pang of conscience and anonymously sends the necklace back to the museum. The thief indignantly storms into the museum, demands that the curators give him back the necklace, and insists that they have no right to it. The matter is litigated and the thief is charged. Could he really argue "no harm, no foul" in his defense?

It is false and disingenuous to argue that "the City" produced the Warren materials. "The City" did *not* do so. "The City" did the opposite. "The City" sent its Chief Deputy City Attorney to expressly tell the Superior Court that "the City" had *not* produced the flash drive, that it had been "inadvertently" given to the Court, and that "the City" wanted it back. It is a legal theory of great chutzpah for the City to go to one court and deny that the production was the City's act and demand the flash drive be returned, and then go to another court and say "Look, we produced the drive, so we complied with *Brady*!"

The City offers no caselaw addressing its contention that it can claim "compliance" based on an act that it expressly disavowed, and declared, in open court, to have been inadvertent and unauthorized.  *See* FAC ¶ 104. Mr. Toland believes that principles of judicial estoppel are controlling in this scenario: the City should be foreclosed from taking one position in one court, and a contrary position in another court. *See, e.g.*, *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) ("Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position…. The application of judicial estoppel is not limited to bar the assertion of inconsistent positions in the same litigation, but is also appropriate to bar litigants from making incompatible statements in two different cases.").

**E. Plaintiff Suffered Significant and Cognizable Constitutional Harm**

The City's contention here, Motion 14:7-15:13, appears to be that there is simply no cognizable constitutional harm in being wrongfully accused of and prosecuted for felony offenses for two years because of the failure to disclose Brady evidence—so long as you get it eventually, before trial.   That is what the City says.  However, none of the cases it cites actually supports that claim.  All the cases the City cites involve criminal convictions.  In each of the cited cases, a

Plaintiff Opposition to Defendant's Motion to Dismiss Under FRCP 12(b)(6)

criminal defendant was convicted, then argued in a subsequent proceeding that the prosecution had withheld *Brady* evidence.[4]

None of the City's cited cases involve a prosecution that was dismissed pre-trial, or that resulted in an acquittal.  None of the City's cases, thus, addresses the scenario of a section 1983 claim following a dismissal or acquittal. Still less do they establish, or even support, the proposition the City is asserting, *viz*., that a criminal conviction is a necessary prerequisite for a section 1983 claim based on suppression of *Brady* evidence. What the City would need to make out its argument would be a governing precedent that says that a person who is wrongfully accused, charged, and prosecuted does not suffer any cognizable injury so long as he is not ultimately convicted.  But no such governing precedent exists.

Indeed, the controlling law is the *opposite*.  Where state actors use their official status and powers to deprive a person of his or her rights, that person states a claim under section 1983, regardless of whether the officials' bad acts led to a criminal conviction.  The Ninth Circuit has so held, clearly and unequivocally, in *Haupt v. Dillard*, 17 F.3d 285, 287 (9th Cir. 1994).  In *Haupt*, a police officer improperly contacted the judge the night before the judge instructed the jury, demanding that the judge not give a particular instruction.  The judge was intimidated, and altered the jury instructions to remove that instruction.  However,

---

[4] Taking them in order beginning at Motion 14:13: *Gantt v. Roe*, 389 F.3d 908 (9th Cir. 2004) (granting habeas petition and vacating conviction); *Tennison v. City and Cty of San Francisco*, 570 F.3d 1078 (9th Cir. 2009) (affirming district court's denial of qualified immunity to detectives in section 1983 suit following defendant's conviction and subsequent exoneration); *United States v. Davenport*, 753 F.2d 1460 (9th Cir. 1985) (reversing conviction); *United States v. Scarborough*, 128 F.3d 1373 (10th Cir. 1997) (affirming conviction); *United States v. Anderson*, 391 F.3d 970 (9th Cir. 2004) (reversing conviction in part and affirming in part); *United States v. Gamez-Orduno*, 235 F.3d 453 (9th Cir. 2000) (reversing conviction in part and affirming in part); *United States v. Alvarez*, 86 F.3d 901 (9th Cir. 1996) (affirming conviction); *United States v. Manning*, 56 F.3d 1188 (9th Cir. 1995) (affirming conviction).

17

Plaintiff Opposition to Defendant's Motion to Dismiss Under FRCP 12(b)(6)

the defendant was acquitted in any event.  The judge subsequently disclosed the communication, and the defendant sued under section 1983.  The city made the exact same 12(b)(6) argument the City tries here, arguing "no harm, no foul," and asserting that there's no cognizable constitutional harm if the defendant is not convicted.  The Ninth Circuit emphatically rejected that argument, affirming the propriety of the claim and explaining: "The fact that Haupt ultimately was acquitted speaks only to the amount of damages he suffered; it is irrelevant to whether he has a cause of action."  *Haupt*, 17 F.3d at 287 (reversing district court and reinstating section 1983 claim based on improper communications between police officer and judge, where district court had ruled (just as the City argues here) that the claim must be dismissed because the defendant's acquittal meant that that no constitutional harm had occurred).  *Haupt* is controlling precedential authority. The City does not cite or acknowledge *Haupt*.

More recently, Judge Pregerson of this Court reached the exact same conclusion, in rejecting the exact same "no-harm, no-foul" argument in the exact same factual and procedural posture presented here:

> Here, in particular, Plaintiff alleges that he spent time in pretrial custody, then suffered the costs imposed by a full criminal trial threatening additional incarceration. When such a loss of liberty is caused by the government's suppression of exculpatory evidence, it may violate the Constitution. And the government cannot claim "no harm, no foul" because of the fortuitousness of defendant's ultimate acquittal. For all these reasons, the court finds that Plaintiff has a potential Section 1983 claim for *Brady* or *Brady*-type violations of his due process rights.

*Gutierrez v. Solano*, 862 F. Supp. 2d 1037, 1043 (C.D. Cal. 2012) (denying motion to dismiss section 1983 claim based on *Brady* violation where plaintiff was acquitted in underlying criminal case).

Plaintiff Opposition to Defendant's Motion to Dismiss Under FRCP 12(b)(6)

And finally, in *McDonough v. Smith*, 139 S. Ct. 2149 (2019), the Supreme Court upheld the validity of a section 1983 claim (for fabrication of evidence by officers, just as is alleged in this case) where the defendant was acquitted.  The Supreme Court reversed the Second Circuit's order affirming the district court's granting of the municipal defendant's 12(b)(6) motion, expressly recognized the validity of a section 1983 claim for presenting false evidence even where there was no conviction, and expressly recognized that being prosecuted subjects an individual to "restraints not shared by the public generally" and thus constitutes a constitutionally cognizable harm. *McDonough v. Smith*, 139 S. Ct. 2149, 2156, fn. 4 (2019).

The City does not cite or acknowledge *McDonough*, *Solano*, or *Haupt*. Mr. Toland expects the City to explain in its Reply brief its failure to acknowledge *McDonough* by arguing that *McDonough* is about the statute of limitations for section 1983 cases, not specifically about whether a section 1983 claim for evidence-related misconduct requires a conviction.  Such an argument neglects, however, the fact that the holding of the case is that the section 1983 statute of limitations begins running at the time of acquittal: "the statute of limitations for a fabricated-evidence claim like McDonough's does not begin to run until the criminal proceedings against the defendant (i.e., the § 1983 plaintiff) have terminated in his favor." *Id*. at p. 2154-55.  Obviously that could not be the holding if "termination in his favor" vitiated the section 1983 claim entirely, as the City argues.  *McDonough* is dispositive authority, if any more were required, that conviction is not a prerequisite for a section 1983 claim; that a person who is prosecuted based on alleged illegal acts by state actors may indeed properly bring a section 1983 claim against those state actors even if he is acquitted.  Here, the fact that the charges against Mr. Toland were ultimately dismissed "is irrelevant to whether he has a cause of action." *Haupt*, 17 F.3d at 287.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.  CONCLUSION

For the foregoing reasons, the Motion should be denied.

DATED:  October 29, 2021

Respectfully submitted,
WERKSMAN JACKSON & QUINN LLP

By:

CALEB E. MASON
JACQUELINE M. SPARAGNA
Attorneys for Plaintiff
Jeffrey Toland

Plaintiff Opposition to Defendant's Motion to Dismiss Under FRCP 12(b)(6)