MICHELE BEAL BAGNERIS, City Attorney
State Bar No. 115423
Email: mbagneris@cityofpasadena.net
Danielle St. Clair, Deputy City Attorney
State Bar No. 280690
Email: dstclair@cityofpasadena.net
Office of the City Attorney
100 North Garfield Avenue, Room N210
Pasadena, CA 91109-1726
Telephone:  626.744.4141  Facsimile: 626.744.4190

Nathan A. Oyster (SBN 225307)
E-mail:  noyster@bwslaw.com
Stephanie A. Quartararo (SBN 317976)
E-mail:  squartararo@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, Suite 2400
Los Angeles, CA  90071-2953
Tel:  213.236.0600       Fax:  213.236.2700

Attorneys for Defendants
ZACHARY MCFARLAND (in his individual and official capacities), STEPHANIE LACK (in her individual and official capacities), and CITY OF PASADENA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY TOLAND,<br><br>Plaintiff,<br><br>v.<br><br>ZACHARY MCFARLAND, in his individual and official capacity; STEPHANIE LACK, in her individual and official capacity; CITY OF PASADENA; and DOES 1-10, inclusive,<br><br>Defendant. | Case No. 2:21-cv-04797-AB-AGR<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT BY DEFENDANT CITY OF PASADENA**<br><br>Date:     November 19, 2021<br>Time:     10:00 a.m.<br>Ctrm.:    7B<br><br>District Judge Andre Birotte, Jr. |

///
///
///
///

1  Defendant City of Pasadena ("Defendant") respectfully submits its Reply
2  Brief in Support of its Motion to Dismiss Plaintiff's First Amended Complaint.

3  Dated: November 5, 2021   BURKE, WILLIAMS & SORENSEN, LLP

By: /s/ *Nathan A. Oyster*
   Nathan A. Oyster
   Stephanie A. Quartararo

Attorneys for Defendants
ZACHARY MCFARLAND, STEPHANIE LACK, and CITY OF PASADENA

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................... 1

II. THE WARREN REPORTS WERE CONFIDENTIAL UNDER CALIFORNIA PENAL CODE § 832.7 AND THE CITY DID NOT HAVE AN AFFIRMATIVE OBLIGATION TO DISCLOSE THE REPORTS ABSENT A PITCHESS MOTION ........................................... 3

III. BECAUSE PLAINTIFF HAS NOT ALLEGED THAT THE DISTRICT ATTORNEY'S OFFICE AS A WHOLE LACKED KNOWLEDGE OF THE WARREN INCIDENT, THE MOST FAVORABLE INTERPRETATION OF THE OPERATIVE PLEADING IS THAT ONLY THE HANDLING PROSECUTOR LACKED THAT KNOWLEDGE ............................................................. 5

IV. THE CITY'S RESPONSE TO THE PUBLIC RECORDS ACT REQUEST OF A NON-PARTY DID NOT GIVE RISE TO A CONSTITUTIONAL CLAIM ................................................................ 8

V. THE CITY COMPLIED WITH ANY OBLIGATION UNDER BRADY TO DISCLOSE THE WARREN REPORTS AND INCIDENT ON NOVEMBER 2, 2020 BY DELIVERING THE WARREN REPORTS TO THE CRIMINAL COURT ............................ 10

    A. The City's November 2, 2020 Disclosure Sufficiently Satisfied any Brady Obligations following Toland's Pitchess Motion ............ 10

    B. Plaintiff Has Not Identified Any Constitutional Harm Caused By The Purported Delay In Disclosure ................................................ 10

VI. CONCLUSION ............................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aguilar v. Woodford*
   (9th Cir. 2013) 725 F.3d 970 ................................................................................ 6

*Brady v. Maryland*
   (1963) 373 U.S. 83 ............................................................................................... 1

*Gantt v. Roe*,
   389 F.3d 908 (9th Cir. 2004) .............................................................................. 11

*Odle v. Calderon*
   (N.D. Cal. 1999) 65 F.Supp.2d 1065 ................................................................... 7

*United States v. Alvarez*,
   86 F.3d 901 (9th Cir.1996) ................................................................................ 11

*U.S. v. Bagley*
   (1985) 473 U.S. 667 ............................................................................................. 8

*United States v. Scarborough*,
   128 F.3d 1373 (10th Cir.1997) .......................................................................... 11

**State Cases**

*Becerra v. Superior Court*,
   44 Cal.App.5th 897 (2020) .................................................................................. 4

*Pitchess v. Superior Court*
   (1974) 11 Cal.3d 531 ........................................................................................... 4

*Riverside County Sheriff's Dept. v. Stiglitz*,
   60 Cal.4th 624 (2014) .......................................................................................... 3

*San Lorenzo Valley Community Advocates for Responsible Education*
   *v. San Lorenzo Valley Unified School Dist.*,
   139 Cal.App.4th 1356 (2006) .............................................................................. 9

**State Statutes**

Evidence Code § 1043 ............................................................................................ 4

Government Code § 6258 .................................................................................................. 9

Penal Code
 § 832.7 ........................................................................................................ 1, 3, 4, 8

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- iii -

2:21-CV-04797-AB-AGR
REPLY IN SUPPORT OF CITY'S MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

After this Court granted the City of Pasadena's Motion to Dismiss the claims in Plaintiff's initial Complaint[1], Plaintiff made another attempt to assert that the City of Pasadena violated his Constitutional rights by not immediately disclosing information about Officer McFarland during the pendency of the underlying criminal case against Plaintiff. As set forth in the City's Motion to Dismiss the Fifth and Sixth Claims for Relief in the First Amended Complaint, Plaintiff's claims against the City fail for multiple reasons.

In his Opposition to the Motion, Plaintiff relied on four primary arguments. First, he claimed that the language of California Penal Code § 832.7 establishes that the Warren reports were not "confidential", thereby establishing that the City had an affirmative Constitutional obligation to disclose those records without a *Pitchess* motion. Second, he argued that even if prosecutors from the District Attorney's Office had actual knowledge of Officer McFarland's involvement in the Warren incident, the City was required to disclose this information to the handling prosecutor in the underlying criminal case. Third, Plaintiff reiterated his belief that the City's response to a Public Records Act ("PRA") request of a non-party violated Plaintiff's Constitutional rights. Finally, Plaintiff argued that the City's production of records to the criminal court on November 2, 2020 did not satisfy any *Brady* obligations that may have existed (*Brady v. Maryland* (1963) 373 U.S. 83).

As set forth in this reply brief, none of Plaintiff's argument are sufficient to defeat the Motion. First, Plaintiff misconstrued California Penal Code § 832.7, which does not rebut the City's position that the Warren reports and the Warren incident remained confidential *for the purposes of the criminal discovery process*.

---

[1] The Motion to Dismiss the initial Complaint was also filed on behalf of Defendant John Nam. After the Motion to Dismiss was granted, Plaintiff did not name Mr. Nam as a Defendant in the First Amended Complaint.

Second, Plaintiff's argument that the handling prosecutor was unaware of the Warren incident – not that the District Attorney's Office as a whole was unaware of the Warren incident – is insufficient to establish a *Brady* violation even if the City had an obligation to disclose the Warren incident from the outset of the underlying criminal case.  Third, the City's response to a non-party's Public Records Act request – even if erroneous – did not violate Plaintiff's Constitutional rights.  Finally, even if the granting of the *Pitchess* motion created an obligation under *Brady* for the City to disclose the Warren reports and the Warren incident, the City had already complied with that obligation by delivering the Warren reports to the criminal court on November 2, 2020 – 28 days before the *Pitchess* motion was granted.

The two primary questions raised by the allegations of the Fifth and Sixth Claims for Relief are whether the City ever had an obligation under *Brady* to disclose either the Warren incident or the Warren reports and, if so, when the City complied with that obligation.  In his opposition brief, Plaintiff never directly answered either question, extolling the extreme position that the City always had a *Brady* obligation and never complied with that obligation.  The relevant timetable, however, directly rebuts Plaintiff's chronology.

To the extent the City had an obligation under *Brady* to disclose the Warren incident and the Warren reports, that obligation arose no earlier than November 30, 2020, which is the date the *Pitchess* motion was granted.  As explained in detail throughout this Reply brief, the mere filing of the criminal case did not create such an obligation, nor did the Public Records Act request of non-party Caleb Mason.

Conversely, even though the City's obligation to disclose arose no earlier than November 30, 2020, the City had already complied with that requirement at an earlier date.  Plaintiff has not and cannot allege that the District Attorney's Office lacked knowledge of the Warren incident, instead focusing on the narrow allegation that the handling prosecutor lacked that knowledge.  Additionally, Plaintiff's own

allegations establish that the criminal court was in possession of the Warren reports on November 2, 2020, which satisfied any *Brady* obligations that may have existed. Given this clear timeline, Plaintiff's Fifth and Sixth Claims for Relief fail as a matter of law and should be dismissed.

## II. THE WARREN REPORTS WERE CONFIDENTIAL UNDER CALIFORNIA PENAL CODE § 832.7 AND THE CITY DID NOT HAVE AN AFFIRMATIVE OBLIGATION TO DISCLOSE THE REPORTS ABSENT A *PITCHESS* MOTION

Plaintiff asserts that the City had an affirmative duty to disclose both the Warren reports and Officer McFarland's involvement in the Warren incident at some point during the course of the criminal matter. The City disputes Plaintiff's contention that the City had such an affirmative obligation on the grounds that the information was not *Brady* material. Even if this Court were to rule that the participation in the Warren incident itself is *Brady* material, any obligation by the City to produce the Warren reports or identify the Warren incident did not develop until at least the granting of the *Pitchess* motion. By that time, the Warren reports had already been disclosed to the trial court. Because the City's only requirement would have been to produce the records to the court for in camera review, and because the court already had the documents before the *Pitchess* motion was even filed, the City could not have violated any obligation it may have had with regard to disclosing the Warren incident and reports to the court, who would have then produced them to Mr. Toland upon the showing of good cause. *Riverside County Sheriff's Dept. v. Stiglitz*, 60 Cal.4th 624, 643 (2014) (If the court determines that the defendant has established good cause for the discovery of officer personnel records, it must conduct an in camera review of the records to determine the relevance and materiality of the information sought). The in camera hearing applies in all cases, regardless of whether the motion was contested, and it cannot be waived. *Id*. at 643-644.

Plaintiff claims, however, that the *Pitchess* process only applies to confidential records, that the Warren reports were not confidential at the time of the PRA request and response, and also suggests that the *Pitchess* procedures no longer apply to records relating to an officer's discharge of their weapons at a person or using force following the amendments to Penal Code section 832.7, even during the course of criminal discovery. Plaintiff is incorrect for several different reasons.

California Penal Code § 832.7 is explicit in that it does not in any way affect the discovery or disclosure of information contained in a peace officer's personnel file pursuant to *Pitchess* and it does not supersede or affect the criminal discovery process. California Penal Code § 832.7(g) explicitly states: "This section does not affect the discovery or disclosure of information contained in a peace or custodial officer's personnel file pursuant to Section 1043 of the Evidence Code." Similarly, section 832.7(h) states "This section does not supersede or affect the criminal discovery process outlined in Chapter 10 (commencing with Section 1054) of Title 6 of Part 2, or the admissibility of personnel records pursuant to subdivision (a), which codifies the court decision in *Pitchess v. Superior Court* (1974) 11 Cal.3d 531."

Although some use of force records or records involving the discharge of a firearm at a person by a peace officer are available via the Public Records Act to the general public, the *Pitchess* process still governs a criminal case. Thus, Mr. Toland was still required to bring a *Pitchess* motion during the course of his criminal case and, any obligation the City may have had to disclose the Warren incident or Warren reports, did not arise until that motion was filed.

Plaintiff's reliance upon *Becerra v. Superior Court*, 44 Cal.App.5th 897 (2020), is misplaced. In *Becerra,* the court addressed a dispute regarding a Public Records Act request, not the question of whether a *Pitchess* motion was required to obtain specific documents when requested during a criminal case.

Finally, the City does not concede, as Plaintiff suggests, that it withheld the

Warren reports from its in camera production to the court during the *Pitchess* process. Instead, the City simply has not raised this issue in its Motion to Dismiss because it is irrelevant. As explained, the criminal court already had the Warren reports within its possession before the *Pitchess* motion was heard, which means the City could not have breached any obligation to produce the reports to the criminal court for their eventual production to Plaintiff.

### III. BECAUSE PLAINTIFF HAS NOT ALLEGED THAT THE DISTRICT ATTORNEY'S OFFICE AS A WHOLE LACKED KNOWLEDGE OF THE WARREN INCIDENT, THE MOST FAVORABLE INTERPRETATION OF THE OPERATIVE PLEADING IS THAT ONLY THE HANDLING PROSECUTOR LACKED THAT KNOWLEDGE

To the extent the City had an obligation to disclose the Warren incident to the Los Angeles District Attorney's Office, the City complied with this obligation on the date of the Warren incident pursuant to the standard practices of the Los Angeles District Attorney's Office. Plaintiff alleged that the Los Angeles Sheriff's Department investigated the officer-involved shooting. FAC, ¶ 21 ("The Sheriff's Department interviewed Officer McFarland."). Pursuant to the policies of the Los Angeles District Attorney's Office, the District Attorney's Office responds to the scene of every officer-involved shooting in Los Angeles County, including those officer-involved shootings investigated by the Los Angeles Sheriff's Department. RFJN, Ex D. Plaintiff did not object to the request for judicial notice, nor has he attempted to allege that the District Attorney's Office had knowledge of Officer McFarland's involvement in the Warren incident. Therefore, even if the City had any *Brady* obligation to disclose the Warren incident, this obligation was satisfied even before the date of Plaintiff's arrest.

Plaintiff argues that even if the District Attorney's Office responded to the Warren incident and had knowledge of the incident, that knowledge cannot be

1  imputed to the "prosecution team" unless the specific prosecutors working on Mr.
2  Toland's case had personal knowledge of the Warren incident.  Plaintiff's argument
3  is contrary to Ninth Circuit precedent.  Even if the prosecuting attorney himself, or
4  his direct team, did not possess the allegedly exculpatory evidence, knowledge of
5  that evidence by other prosecutors in his office was imputed to him under *Brady*.
6  *Aguilar v. Woodford* (9th Cir. 2013) 725 F.3d 970, 982 (holding that even if the
7  trial attorney himself did not possess the exculpatory evidence, knowledge of that
8  evidence held by other prosecutors working in his office is imputed to him under
9  *Brady*).

10  In *Aguilar v. Woodford*, the defendant, Aguilar, was convicted of the murder
11  of a Mr. John Guerrero.  Guerrero was murdered when someone exited a
12  Volkswagen and shot him.  Although the prosecution had little physical evidence
13  connecting Aguilar to the crime, a "scent dog" indicated that Aguilar had recently
14  been in the Volkswagen prior to the murder.  This "scent" evidence was presented
15  at trial and was the strongest evidence linking Aguilar to the crime.  Aguilar was
16  convicted. Unbeknownst to defense counsel at the time of trial, the prosecution had
17  stipulated in another case ("the *White* case") only a few months earlier that Reilly,
18  the scent dog, had made mistaken identifications on two prior occasions.  *Id*. at 980.
19  After the *White* case concluded, the Los Angeles County Public Defender wrote a
20  letter to the Los Angeles District Attorney, Steven Cooley, and stated:

21  "I bring this to your attention because I believe that this information
22  constitutes *Brady* discovery and I believe that at a minimum this information
23  should be disclosed to every defense attorney who represents or has
24  represented an individual in a case in which Mr. D'Allura will or has
25  presented evidence regarding his dog Reilly's ability to detect scents." *Id*. at
26  980-981.

27  The Los Angeles District Attorney's office prosecuted Aguilar's case six
28  months after the *White* case concluded.  At Aguilar's trial, the prosecutor trying the

1 case did not disclose to the defense the earlier mistaken identifications, the
2 stipulation in the White case, or the letter to District Attorney Cooley from the
3 County Public Defender.  Aguilar filed a habeas petition the Court of Appeal
4 arguing in part the prosecution had violated *Brady* by failing to disclose the
5 purported exculpatory evidence—that Reilly had a history of misidentification. The
6 California Court of Appeal affirmed Aguilar's conviction and denied his habeas
7 petition in a single disposition.  *Id*. at 981.  Aguilar petitioned for habeas corpus in
8 federal district court on this issue, amongst others.  The magistrate judge hearing
9 the case recommended that the petition be denied.  The district court adopted the
10 magistrate judge's recommendation without comment.  Aguilar then appealed to the
11 Ninth Circuit, which agreed with his *Brady* argument. *Id*.

12 The Ninth Circuit reversed and remanded the district court's decision and in
13 doing so held that even if the individual prosecutor at Aguilar's trial did not possess
14 the *Brady* information at the time of the trial, knowledge of the exculpatory
15 evidence was imputed to him under *Brady* **because it was held by other**
16 **prosecutors in his office**, including District Attorney Cooley, **and was therefore**
17 **imputed to all other prosecutors working in the Los Angeles District**
18 **Attorney's Office**. *Id*. at 982, emphasis added.  While the "prosecution team" may
19 not include agencies in a different jurisdiction, or departments unrelated to the
20 prosecuting office, it surely includes the prosecutors in the trial attorney's own
21 office.  See also *Odle v. Calderon* (N.D. Cal. 1999) 65 F.Supp.2d 1065, 1071
22 (knowledge will be imputed to the prosecutor where the impeaching evidence is
23 known to other members of the "prosecution team." This includes information
24 known to other prosecutors in the same office).

25 Because the judicially-noticeable evidence establishes that the Los Angeles
26 District Attorney's Office, through its Justice System Integrity Division, had
27 knowledge of the Warren incident, the City satisfied any *Brady* obligation that may
28 have existed to disclose Officer McFarland's mere participation in the Warren

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -

2:21-CV-04797-AB-AGR
REPLY IN SUPPORT OF CITY'S MOTION TO
DISMISS

incident.

## IV. THE CITY'S RESPONSE TO THE PUBLIC RECORDS ACT REQUEST OF A NON-PARTY DID NOT GIVE RISE TO A CONSTITUTIONAL CLAIM.

Plaintiff claims that the City's Public Records Act response to Caleb Mason, who is not a party to this action, prejudiced Plaintiff's defense in the criminal matter and therefore violated Plaintiff's constitutional rights under *Brady*. In doing so, Plaintiff cites to *Bagley*, which involved the Government's incorrect response to a discovery motion during the course of a criminal case, which the defendant claimed violated his rights under *Brady*. *U.S. v. Bagley* (1985) 473 U.S. 667, 667. The City does not dispute that a prosecuting agency's failure to disclose potentially exculpatory evidence in response to a criminal discovery request during the course of a criminal case may result in a constitutional violation under *Brady*. What the City does dispute is that an erroneous response to a Public Records Act request can equate to a constitutional violation under *Brady*. As described in detail above, Penal Code § 832.7, which allows for at least the identification of the type of information and records at issue, is explicit in that it does not in any way affect the discovery or disclosure of information contained in a peace officer's personnel file pursuant to *Pitchess* (see California Penal Code § 832.7(g)) and it does not supersede or affect the criminal discovery process (see California Penal Code § 832.7(h)). As such, even assuming that the City's response was erroneous, the response did not alter or affect the criminal discovery process or the disclosure obligations of those involved in the criminal process. Therefore, the City's response could not have violated Plaintiff's rights under *Brady*.

The remedy for an inaccurate Public Records Act response, or when a local agency denies access to copies of public records, is a civil action for injunctive or declaratory relief, or writ of mandate, to enforce their right to inspect or receive a copy of any public record or class of public records under the Public Records Act.

*See* California Government Code § 6258. Plaintiff cites to no authority suggesting that the Public Records Act takes the place of the criminal discovery process and that an erroneous Public Records Act response can result in the violation of the rights of a criminal defendant.

      Finally, as set forth in the City's moving papers, despite Plaintiff's allegations to the contrary, Plaintiff's Constitutional rights could not have been violated by the Public Records Act response because the Public Records Act request was made Caleb Mason, and not Plaintiff.  Mr. Mason's request did identify himself as Plaintiff's lawyer or suggested that the request was being made in relation to Plaintiff's criminal case.  RFJN, Ex. B.  Plaintiff lacks standing to assert any claim relating to the Public Records Act request.  The Public Records Act request was made by Mr. Mason in his personal capacity, and any state court action that could have been filed with respect to the City's response would have been filed by Mr. Mason, not by Plaintiff.  Just as Plaintiff would be unable to pursue an action to enforce Mr. Mason's rights under the Public Records Act for the City's alleged improper Public Records Act response to Mr. Mason, Plaintiff cannot claim that his constitutional rights were violated here. See *San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School Dist.*, 139 Cal.App.4th 1356, 1415 (2006) (holding that the CPRA provision authorizing plaintiff to enforce his or her right to inspect or to receive a copy of any public record contemplates a declaratory relief proceeding commenced **only by the individual or entity seeking disclosure of public records**).  If this were not the case, by Plaintiff's logic, every criminal defendant in a case involving Officer McFarland could use the Public Records Act response directed toward Mr. Mason as a basis for a claim against the City.

///

///

///

## V. THE CITY COMPLIED WITH ANY OBLIGATION UNDER *BRADY* TO DISCLOSE THE WARREN REPORTS AND INCIDENT ON NOVEMBER 2, 2020 BY DELIVERING THE WARREN REPORTS TO THE CRIMINAL COURT

### A. The City's November 2, 2020 Disclosure Sufficiently Satisfied any *Brady* Obligations following Toland's *Pitchess* Motion

In his opposition, Plaintiff argues that the City's disclosure of the Warren reports and incident on November 2, 2020 did not constitute compliance because Plaintiff takes issue with the way in which the documents allegedly made their way to the criminal court. There is no dispute City produced the Warren reports and incident to the criminal court on November 2, 2020 and that disclosure satisfied any *Brady* obligations that may have existed at the time.

The relevant timetable is as follows: Plaintiff filed a discovery motion on September 24, 2020. FAC, ¶ 102. On October 8, 2020, the Court granted the discovery motion and ordered production to occur by November 2, 2020. FAC, ¶ 103. FAC, ¶ 104. The Warren reports were produced to the Court on November 2, 2020, which was compliant with the Court's disclosure order. FAC, ¶ 101. A *Pitchess* motion was then filed on November 12, 2020, which was granted on November 30, 2020. Even if the granting of the *Pitchess* motion created an obligation under *Brady* for the City to disclose the Warren reports and the Warren incident, the City had already complied with that obligation by delivering the Warren reports to the criminal court on November 2, 2020. As discussed in more detail above, the City's only requirement would have been to produce the records to the court for in camera review, which the City had already done.

### B. Plaintiff Has Not Identified Any Constitutional Harm Caused By The Purported Delay In Disclosure

Even if the November 2, 2020 disclosure was somehow "delayed", Plaintiff did not suffer any Constitutional harm because the information and records were

1  disclosed at a time when they were still of value to him. *Gantt v. Roe*, 389 F.3d
2  908, 912 (9th Cir. 2004) (In general, disclosure of *Brady* material must be made at a
3  time when it would be of value to the accused). Plaintiff misconstrues the City's
4  argument as an assertion that a criminal conviction is a necessary prerequisite for a
5  section 1983 *Brady* claim; the City's argument is far more limited. The City has
6  asserted that any delay that occurred from the November 2, 2020 production of the
7  Warren reports to the criminal court until the date that Plaintiff received the Warren
8  reports cannot serve as the basis for the claim against the City, as Plaintiff has
9  alleged no harm relating to that time period.

10  Assuming that the delay in disclosure past November 2, 2020 was
11  attributable to the City, the Warren reports were disclosed at a time when the
12  reports would be of value to Plaintiff. "As long as ultimate disclosure is made
13  before it is too late for the defendant to make use of any benefits of the evidence,
14  Due Process is satisfied." *United States v. Scarborough*, 128 F.3d 1373, 1376 (10th
15  Cir.1997) (quoting *United States v. Warhop*, 732 F.2d 775, 777 (10th Cir.1984).
16  Accordingly, Plaintiff cannot establish a *Brady* violation as to the timing of the
17  disclosure. *United States v. Alvarez*, 86 F.3d 901, 905 (9th Cir.1996) (finding no
18  *Brady* error despite prosecutor's delay in producing *Brady* material because material
19  was ultimately turned over in time for defendant to use at trial). Because Plaintiff
20  has not articulated how any delay in disclosing the Warren reports to Plaintiff after
21  November 2, 2020 violated Plaintiff's Constitutional rights, this time period cannot
22  serve as the basis for Plaintiff's claims.
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

## VI. CONCLUSION.

For the foregoing reasons, the Fifth and Sixth Claims for Relief, which are the only claims against Defendant City of Pasadena, should be dismissed. The City respectfully request that the Court grant the Motion without leave to amend.

Dated: November 5, 2021　　　　BURKE, WILLIAMS & SORENSEN, LLP

By: */s/ Nathan A. Oyster*
　　Nathan A. Oyster
　　Stephanie A. Quartararo

Attorneys for Defendants
ZACHARY MCFARLAND, STEPHANIE LACK, and CITY OF PASADENA