UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:21-cv-04797-AB-AGRx | Date: | February 25, 2022 |
|---|---|---|---|

| Title: | *Jeffrey Toland v. Zachary McFarland et al.* |
|---|---|

| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |
|---|---|

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** [In Chambers] ORDER <u>**GRANTING**</u> CITY'S MOTION TO DISMISS COUNTS 5 AND 6 OF THE FIRST AMENDED COMPLAINT [Dkt. No. 35]

Before the Court is the City of Pasadena's (the "City") Motion to Dismiss First Amended Complaint ("Motion," Dkt. No. 35). Plaintiff Jeffrey Toland ("Plaintiff") filed an opposition and the City filed a reply. The Motion is <u>**GRANTED**</u>.

**I.  PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff filed his First Amended Complaint ("FAC," Dkt. No. 31) after the Court granted a Motion to Dismiss the original Complaint, with leave to amend in part.[1] The FAC alleges that Pasadena police officers Zachary McFarland and

---

[1] Plaintiff streamlined the FAC based on the Court's admonition that the original 63-page Complaint violated Fed. R. Civ. P. 8. But the 36-page FAC is still laden with superfluous material including evidence, repeated allegations, rhetoric, and

Stephanie Lack used excessive force against Plaintiff during an unjustified traffic stop, and fabricated evidence afterwards. Plaintiff was charged with assault, but the charges were later dropped. These allegations are the basis of counts 1-4, which assert claims under 42 U.S.C. § 1983 against McFarland and Lack for violating Plaintiff's constitutional rights. These counts are not challenged in this Motion.

Plaintiff also asserts two claims under 42 U.S.C. § 1983 against the City of Pasadena: the Fifth Claim, alleging that the City violated Plaintiff's Constitutional rights by deliberately suppressing exculpatory evidence, and the Sixth Claim alleging that the City conspired to suppress that exculpatory evidence. In keeping with the briefing, the Court will refer to these together as Plaintiff's *Brady* claims.

Both claims arise from the same factual basis: that the City suppressed evidence that on May 17, 2019, Officer McFarland was a shooting officer in the officer involved shooting of Daniel Warren ("Warren Incident"). *See* FAC ¶¶ 82-92. This evidence includes a 234-page investigation report about the Warren Incident, all of it dated between May 17, 2019 and July 10, 2019. FAC ¶ 99. Plaintiff asserts that the Warren Incident and the records related to it are *Brady*-type material. Plaintiff asserts that he sought such material by several means including a September 23, 2019 Public Records Act request (FAC ¶¶ 96-101); an August 7, 2019 discovery request in the criminal case (FAC ¶¶ 94-95); a September 24, 2020 motion in the criminal case that was granted with production due by November 2, 2020 (FAC ¶¶ 102-103); and a November 12, 2020 *Pitchess* motion that was granted on November 30, 2020 (FAC ¶¶ 104-105). Plaintiff alleges that the City did not timely produce the Warren Incident materials.

Plaintiff also alleges, however, that on November 2, 2020, a Pasadena Police Department whistleblower disclosed the Warren Incident materials to the State Court. FAC ¶ 101. The City Attorney's Office tried to get it back, saying it was inadvertently produced. FAC ¶ 104. But Superior Court Judge Terri Schwartz disagreed and ordered the materials produced to the Los Angeles County Deputy District Attorney ("DDA"), which occurred on March 9, 2021. Shortly thereafter, the DDA produced the materials to the Defense, and on April 22, 2021, the DDA dismissed all of the charges against Plaintiff, stating on the record that these materials made it impossible to pursue the charges. SAC ¶¶ 110-111.

Plaintiff's overall theory is that the City had an obligation to disclose the

---

commentary. Identifying the operative factual allegations remains unnecessarily burdensome.

Warren Incident materials and didn't do so timely, either to the DDA or to Plaintiff. As a result, Plaintiff was wrongfully prosecuted. That the DDA dismissed the charges shortly after receiving the Warren Incident materials demonstrates that Plaintiff wouldn't have been charged in the first place had the City timely disclosed the Warren Incident materials.

Defendant City now moves to dismiss Plaintiff's *Brady* claims on several bases. First, Defendant argues that *Brady* was satisfied by the District Attorney's ("D.A.") Office's presence at the Warren Incident. Second, the City argues that its allegedly deficient response to the Public Records Act request cannot sustain Plaintiff's constitutional claim. Third, the City argues that the Warren Incident materials were disclosed timely on November 2, 2020, and therefore there was no *Brady* violation.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 8 requires a plaintiff to present a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To defeat a Rule 12(b)(6) motion to dismiss, the complaint must allege enough facts to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Id*. The complaint must also be "plausible on its face," that is, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

A complaint may be dismissed under Rule 12(b)(6) for the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). When ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S.

89, 94 (2007). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (2009) (internal quotation marks omitted).

A court generally may not consider materials other than facts alleged in the complaint and documents that are made a part of the complaint. *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996). However, a court may consider materials if (1) the authenticity of the materials is not disputed and (2) the plaintiff has alleged the existence of the materials in the complaint or the complaint "necessarily relies" on the materials. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted). The court may also take judicial notice of matters of public record outside of the pleadings and consider them for purposes of the motion to dismiss. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Lee*, 250 F.3d at 689-90.

In federal court, "[in] alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Rule 9(b) requires a plaintiff averring fraud to plead the 'who, what, when, where, and how' of the alleged misconduct." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)

### III. DISCUSSION

Because Plaintiff's claims are rooted in the Due Process Clause of the Fourteenth Amendment as recognized by *Brady* and its progeny, the Court begins with an overview of *Brady*'s disclosure requirements. The Court will then address the parties' arguments.

#### A. *Brady*'s Disclosure Requirements

*Brady v. Maryland*, 373 U.S. 83, 87 (1963) held that prosecutors are constitutionally obligated under the Fourteenth Amendment to disclose "evidence favorable to an accused . . . [that] is material either to guilt or to punishment." The prosecutor must turn over exculpatory evidence, but "*Brady* suppression [also] occurs when the government fails to turn over even evidence that is 'known only to police investigators and not to the prosecutor.' " *Youngblood v. W. Virginia*, 547 U.S. 867, 869–70 (2006) (state trooper's alleged destruction of exculpatory evidence could be a *Brady* violation).

The Supreme Court has identified "three components of a true *Brady*

violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

### B. The Mere Presence of a District Attorney's Office Investigator at the Scene of the Warren Incident Did Not Satisfy *Brady*

The City first argues that it satisfied its obligation to disclose the Warren Incident to the D.A.'s Office because the D.A.'s Office responds to the scene of every officer-involved shooting in Los Angeles County. As such, the City argues, someone from the D.A.'s Office responded to and already knew of the Warren Incident, so the City did not itself have to separately comply with *Brady*. The City is thus essentially arguing that the D.A.'s Office, and not the City, failed to comply with *Brady* by not disclosing to Plaintiff the incident it already knew about. But the City cites no authority for its theory that the mere presence of any person from the D.A.'s Office at the scene of an officer-involved shooting would satisfy whatever *Brady* obligation the City has to disclose that shooting during a subsequent criminal prosecution. Furthermore, Plaintiff's *Brady* claims don't rest solely on the mere fact of the Warren Incident, but on the 234 page report and the underlying evidence which were necessarily created later and which was in the City's possession. *See* FAC ¶ 113. The Court therefore rejects the City's argument that the presumed presence of someone from the D.A.'s Office satisfied the City's *Brady* obligation to Plaintiff.

### C. The City's Response to Attorney Mason's Public Records Act Request Cannot Support Plaintiff's Constitutional Claim.

Plaintiff alleges that on September 23, 2019, "the defense served a Public Records Act [PRA] request on the Police Department under Penal Code section 832.7(b)," FAC ¶ 96, which, as applicable, requires the disclosure of records relating to an officer shooting at a person or use of force that resulted in serious bodily injury or death. *See* Penal Code § 832.7(b)(1)(A)(i), (ii). The letter specifically asked for such records relating to Officer McFarland or Officer Lack. FAC ¶ 96. On October 11, 2019, the Police Department responded with a letter signed by the Chief of Police that said, "Please be advised that the Pasadena Police Department has no records that are responsive to your request." FAC ¶ 98. However, the response letter was false, because the Department was in possession of the Warren Incident report. FAC ¶¶ 98-99. Furthermore, the response was not only factually incorrect but violated § 832.7(b)(7)(A)(i) and (ii), which permits an

agency to temporarily withhold responsive documents during an active criminal investigation of the use of force, but requires the agency to explain that and to produce the documents later. *See* Opp'n 13:7-28. The City's response was therefore not only incorrect but also misleading in that it could have discouraged the requester from seeking the information by other means. *Id.* Plaintiff contends that by not disclosing this *Brady*-type material in response to the PRA request, the City violated his Fourteenth Amendment due process rights.

The parties dispute numerous aspects of this claim, and to be sure, assuming the facts in the light most favorable to Plaintiff, the Police Department's response to the PRA request is troubling. However, Plaintiff's constitutional claim fails for several reasons.

First, a person's entitlement to public records pursuant to the PRA is a function of the statute itself, and is not a function of the United States Constitution. Therefore, while an agency's incorrect or inadequate response to a PRA request may give rise for a claim for violating the PRA, it does not give rise to a violation of the Fourteenth Amendment. More specifically here, *Brady* rights arise in the context of a criminal prosecution. Plaintiff's PRA request had no apparent connection to his criminal prosecution: the records were sought pursuant to the PRA, not pursuant to Plaintiff's rights under *Brady*. Accordingly, Plaintiff cannot rest his *Brady* claims on the City's faulty response to the PRA request.

Furthermore, as the City points out, the request letter was sent by attorney Mason—who represented Plaintiff in the criminal case as well as this case—and nothing in the letter indicates that Mr. Mason was acting as Plaintiff's (or anyone else's) counsel when he sent the letter. *See* PRA Request Letter (RJN Ex. B[2]). In *San Lorenzo Valley Cmty. Advocs. for Responsible Educ. v. San Lorenzo Valley Unified Sch. Dist.*, 139 Cal. App. 4th 1356, 1414 (2006), the Court of Appeal affirmed the trial court's ruling that an organization did not have standing to enforce the PRA relative to a PRA request sent by an individual whose request did not identify him as acting on behalf of that organization. As the Court noted, the statute authorizes a plaintiff "'to enforce *his or her right* to inspect or to receive a copy of any public record or class of public records under this chapter' (§ 6258, italics added) [and] provides neither explicit nor implicit authority for one person to enforce another's inspection rights." *Id.*, 139 Cal. App. 4th at 1415. Given that the PRA request here was, on its face, made by Mr. Mason, Plaintiff has no

---

[2] The Court grants the City's unopposed request to takes judicial notice of the letter. *See* RJN (Dkt. No. 36).

standing to enforce any rights triggered by that request, or to redress harms allegedly caused by the Police Department's deficient response to that request.

For these reasons, Plaintiff's Fourteenth Amendment *Brady* claim based on the City's allegedly deficient PRA response fails.

### D. Because the Superior Court Was In Possession of the Warren Incident Materials on November 2, 2020, All Other Bases of Plaintiff's *Brady* Claim Fail.

Although Penal Code § 832.7(b) renders some peace officer records non-confidential and disclosable for purposes of a PRA request, §§ 832.7(g) and (h) provide that discovery of peace officer personnel files is still governed by Evidence Code § 1043, that the criminal discovery process of the Evidence Code still applies, and that the *Pitchess* process (§832.7(a)) governs the admissibility of personnel records. *See* Penal Code §§ 832.7(g), (h). *Accord Walnut Creek Police Officers' Ass'n v. City of Walnut Creek*, 2019 WL 1517683, at *1 (Cal.Super. Feb. 8, 2019) ("The new subdivision (b) does not alter the *Pitchess* procedure; it simply bypasses it.").

A criminal defendant (or a prosecutor)[3] seeking impeaching or exculpatory materials from peace officer's confidential personnel records must file what is commonly called a *Pitchess* motion. If the movant makes "a threshold showing, the court must review the records in camera and disclose to that party any information they contain that is material to the underlying case." *People v. Super. Ct. (Johnson)*, 61 Cal.4th 696, 705 and fn. 2 (2015); *see* Evid. Code, §§ 1043, 1045, 1046. The Court may disclose these records subject to a protective order limiting how the requestor may use them. The *Pitchess* procedure has been found to be consistent with, and to reflect an implementation of, the principles the Supreme Court set forth in *Brady* and as applied to discovery requests in *Pennsylvania v. Ritchie*, 480 U.S. 39, 58 (1987). *See City of Los Angeles v. Superior Court*, 29 Cal.4th 1, 14 (2003) (discussing *Brady*, *Ritchie*, and *Pitchess* scheme, and finding that they "operate[] in parallel"); *see also Harrison v.*

---

[3] "Consistent with a recognition that one legislative purpose in establishing these [*Pitchess*] procedures was to protect the officers' privacy interests 'to the fullest extent possible', we have said that this provision requires the prosecution, as well as the defendant, to comply with the *Pitchess* procedures if it wishes to obtain information from confidential personnel records." *People v. Super. Ct. (Johnson)*, 61 Cal.4th 696, 712 (2015)

*Lockyer*, 316 F.3d 1063, 1066 (9th Cir. 2003) (the *Pitchess* procedure "faithfully follow[s]" Supreme Court precedent in *Brady* and *Ritchie*). Furthermore, because "*Brady*'s constitutional materiality standard is narrower than the *Pitchess* requirements," *Johnson*, 61 Cal.4th at 711-12, a prosecutor's compliance with *Pitchess* generally implies compliance with *Brady*.

Here, the FAC alleges that the Superior Court had the Warren Incident materials in its possession by November 2, 2020. This was the deadline by which disclosure was ordered pursuant the Court's order granting Plaintiff's discovery motion and preceded by 10 days Plaintiff's November 12 filing of his *Pitchess* motion. Given that the *Pitchess* process still governs the admissibility of such materials, and that it requires the Superior Court to review the documents before ordering their disclosure, the Superior Court's possession of the Warren Incident materials as of November 2 satisfied *Pitchess* and *Brady* and forecloses Plaintiff's *Brady* claims. *C.f. U.S. v. Dupuy*, 760 F.2d 1492, 1501 (9th Cir. 1985) ("By submitting the issue to the judge, the prosecutor satisfied her duty to disclose exculpatory material.").

Plaintiff argues that the Warren Incident materials were not disclosed to the Superior Court by the City but instead by a whistleblower within the Pasadena police department whose act was unauthorized. As such, Plaintiff argues, the City did not comply with *Brady* and his claim against it is viable. The surface appeal of Plaintiff's argument cannot salvage his claim. Plaintiff cannot point to any prejudice that resulted from these materials being produced timely by a whistleblower instead of timely by the City itself. *See Strickler*, 527 U.S. at 281–82 (prejudice is an element of a *Brady* claim). Had the City instead of an alleged whistleblower provided the materials to the Superior Court on November 2, 2020, Plaintiff would have been in the same position. And because the *Pitchess* process still had to be followed, Plaintiff could not have received the Warren Incident materials any sooner, because he filed his *Pitchess* motion later, on November 12. In sum, Plaintiff received the Warren Incident materials timely, and that he allegedly received them from an unauthorized whistleblower and not from the City itself does not give rise to a *Brady* claim.

//
//
//
//

### IV. CONCLUSION

For the foregoing reasons, the City's Motion to Dismiss Plaintiff's Fifth and Sixth Claims against the City is **GRANTED**. These claims cannot be cured by amendment, so they are hereby **DISMISSED with prejudice**. As these are the only claims Plaintiff asserts against the City, the City is terminated from this action.

**IT IS SO ORDERED**.